We'll hear argument next in numbers 21, 28, 33 and 21, 28, 34, United States v. Dear. And we'll wait a minute for a council to come up to the front of the room. Okay. Mr. Appleton. Thank you. Good morning, Your Honors. Robert Appleton from Olshan Froma Wolofsky on behalf of Defendant Chaz Dear. May it please the Court, this is an appeal by Defendant Dear on both on the denial of his motion to suppress evidence, that is a particular firearm that was seized at 277 Howe Street where he lived without a hearing, and also an appeal of his sentence. Two issues with his sentence, one the judge's comments of sentencing and also a four-level enhancement for possession of a firearm in connection with another offense. Addressing first the motion to suppress, the district court denied the motion to suppress. We respectfully submit there was absolutely zero probable cause to find a firearm in his house. The affidavit had no evidence that guns or drugs had ever previously been found in the house. The only evidence supporting probable cause was a paragraph in the warrant that alleged that the training and experience of officers is that drug dealers have firearms in their home. That's it. And there is no case. And the two controlled buys. Can I address that? Thank you, Your Honor. Of course. So the two controlled buys are, the record is incredibly sketchy. First, there's only one identification of this, of Mr. Dear, coming out of the back of the duplex residence. That's it. What the evidence was... Was he not identified as the seller? I'm sorry? Was he not identified as the seller in these two controlled buys? At a location a far distance away from the house. But he was at that location, he was the one who was identified as the seller. Once. He was identified coming out of the house and traveling to the location of the buy, which is unclear. It's clearly a distance away from the house, but it's unclear how he gets there. There's no evidence or facts in the record about whether... But they followed him, right? He didn't go anywhere else. There's a sentence in the affidavit that says they followed him. That's it. A sentence. Did he drive? If he drove, did he walk? It's not clear. There's no evidence. So you can explain, like, why you think there might be some nuances to this. But just, if in fact the government follows him from his home to a controlled buy and sees him participating in a drug deal, and then says, well, we followed him, and so he didn't go anywhere else. He went from home to the drug deal, and so we infer that he has drugs in his home. We also, based on our experience, know that drug dealers, that's where they keep drugs. Why is that not probable cause? Or is your argument that that's not what we have here? Both. That would be probable cause, but that's not what we have here. Well, no. My argument is, A, it's not what we have here. You can't infer that there's evidence in a home, which is the most sacred Fourth Amendment right or location, in a home without facts and evidence. If he went from his home to the drug deal and sold drugs, and the police observed him, or the authorities observed him the whole way, and he didn't go anywhere else in between, that would not be probable cause to think there were drugs in his home? No. First of all, if I can correct the record, the evidence is he went from the back of the home, outside of the home. He was seen outside of the home, traveling to the location. That's it. He wasn't seen in the home. There's no drugs seen in the home. There's no, typically in these warrants, you have a C.I. or confidential informant saying, I saw drugs or contraband in the home. You don't have that here. You have nothing. You have him being seen going from the back of his home to the location, and that's all. That's all. You don't have him coming out of the home with drugs. Well, that's not exactly all. The buyer turned over some material to the cops after he did the buy. We're not disputing that there was two sales. We're not. But those sales were occurred a far distance from the home. Your argument is that it didn't justify a search of his home. Correct. There's no probable cause to search the home for guns or drugs. And secondly— I understand it's not a certain proof that he necessarily had drugs in the home, but isn't it probable cause to believe he might? No. No. Really? It's just sort of an arbitrary belief. Might. You see him traveling from his home to a drug deal, and it's just a kind of arbitrary belief that, you know, maybe he had drugs in his home. Why would you think that? There's no reason to think that at all. Well, respectfully, two things. One is, again, he traveled from the back of his home. No one saw him in the home. Second, we don't know if he took a car, which is most likely the case, could have taken the drugs out of a compartment in the car, under the seat, out of the trunk, out of the glove compartment. We don't know. There's only one sentence about the surveillance, and we were not allowed in evidence you're hearing to test what that information was. The judge denied the motion without a hearing. And then secondly, there's no case, respectfully, Your Honor, that supports searching of a home based on inference that he might have drugs in the home. There has to be facts that lead to probable cause. And secondly, our argument is that the warrant here material omitted critical facts that an officer associated with this task force, a parole officer, the defendant was on parole. He had been visited in the home twice, once on October 15th, where there was a full search of the home just a couple of months before this warrant was applied for, that didn't see any drugs or contraband, nothing. That information is not in the warrant. Was that before or after the controlled buys? Before. Before. After they saw nothing, he made two controlled buys. Well, I apologize. I think one controlled buy was in September, and so one was before, one was after. But the point is, is that a parole officer who's referenced in the warrant, in paragraph 21, it's referenced in the warrant, the affidavit, the affiant, Edwards, communicated with parole officer Wallace. Wallace is a parole officer who had been in the home twice. It's no drug. The first time he entered the home, it was to fix his ankle monitor, right? Once. And the second time it was a compliance check, and he did find drug paraphernalia, right? Well, there was a testimony of sentencing that he found drug paraphernalia, but he has no report that that was the case. There was no arrest. There was no violation of probation. And more importantly, that comes out of sentencing. It's not in the warrant. So you're saying that maybe it's not true that he found drug paraphernalia, but if, in fact, he did see drug paraphernalia, that makes it more likely rather than less likely there were drugs in the home, doesn't it? No. Well, and also I would respectfully submit we're talking about a firearm. This warrant authorizes. The firearm was next to the drugs, wasn't it? Right. But the warrant authorizes a search of a firearm in the home. There's no evidence in Mr. Wallace's observation when he was in the home that there was a firearm. Even if he saw drug paraphernalia, assuming for sake of argument he found drug paraphernalia, there's no evidence he found a gun. This warrant authorizes search of a home for a firearm. There's no evidence anywhere. There's no evidence at the buys that he had a firearm. The CIA doesn't say he has a firearm. No one says they saw a firearm in the home. There's no probable cause for a firearm, zero. There's nothing. There's no reference to any firearms. I think we have that argument. I guess you're out of time, but I'd still like to hear something about the sentencing enhancement. Sure. You can say a few words about that before we turn to the jury. Sure. Thank you. So at sentencing there's two issues to be raised. One is the first, when the judge came out of the bench and sentenced, and when she sentenced the defendant she immediately referenced a shooting of a 14-year-old boy in Hartford, and gun violence generally. And she specifically said, and also referenced a text message that came out, an interpretation of an agent who interpreted a text message that said that he testified that Mr. Deere had been involved in a shooting six years ago. So the judge comes out, says that, and she says, quote, we have seen the record, record gunshot deaths and injuries this year because of young people illegally possessing and indiscriminately and vindictively firing firearms. This isn't a mere possession of a firearm case. This is a case which exemplifies the pain and suffering that we are experiencing in our cities and the state and around the country. The reference was to a 14-year-old boy shooting in Hartford. Mr. Deere was incarcerated. He was in jail for more than two years. He has never once been alleged to have been involved in any activity in Hartford. He's from Bridgeport. The implication of that statement is not that he was involved in the shooting of the boy in Hartford. That's a comment about gun violence, right? I would respectfully disagree. What happened was that those comments were attributed to Mr. Deere as if he was responsible for those actions. He wasn't responsible for that. He had nothing to do with that. He had been in jail for plus two plus years. That was personified. If, in fact, he was using a gun to commit drug crimes, that that is just part of the general problem of gun violence. Well, the evidence that he was using a gun to commit gun crimes was not – That's what I actually wanted to hear about. So your argument is because the gun was found in the proximity of the drugs, it's not enough to infer that he used a gun to commit drug crimes. In fact, yes. Why is it not a reasonable inference that if he had – if the drugs are found and they're together with the gun, that when he went to do drug deals, he would be carrying a gun? Well, respectfully, there is one case in the circuit that does make that finding. But I would respectfully submit this is not that case. The drugs that were found in the home were minuscule amounts. We're talking about 1.6 grams of heroin, a tiny amount of cocaine. The sales in this case, the sales, the two controlled sales, were minuscule amounts of marijuana. I mean, this is not a major drug dealer. He would – there's – the government introduced it sentencing a bunch of – I'm sorry. So you're saying that because of the quantity or type of drug, it reduces the plausible inference that finding a gun near the drugs means that he carried the gun while dealing the drugs? I would respectfully submit there is no evidence at all that he carried any gun dealing drugs. None. None. Well, there was a gun. There was a gun in the house. No dispute. A gun in the house. There's no evidence that gun was used, possessed. Would it have been use of a gun in the commission of a drug offense if he just carried it to the drug deal? If that were the facts? That would be enough that if he just carried it with him. Perhaps. And so the inference here is the district court decided basically that because he had a gun right next to the drugs that it's – that it shows that he would carry it with him when he was dealing the drugs. The district court found, yes, that the proximity of the gun to the drugs was sufficient to make that finding, and there is no – again. So I guess you're saying because you're focusing on the type of drugs and the quantity, if it was a larger quantity of a more serious drug, you think it would have been – Stronger proof. Stronger proof that the gun was used? Without question. So we should just sort of say in general we don't think for selling marijuana that you would carry a gun, but for other types of drugs you would. Why would that be? Isn't – is the inference based on the fact that the gun was there with the drugs? The inference is based on the fact that the gun was near the drugs, but you'd have to have more. There has to be more. The cases that have found the four-level enhancement is appropriate have more than that. That's not enough. There's no evidence here in the record of any gun anywhere. Anywhere. There's no evidence of him carrying the gun to the buys. The CIA doesn't say he saw a gun on him. There's no evidence of any officer seeing it. They didn't search him during the controlled buys so that he might very well have been carrying the gun to protect himself or the drugs, and they didn't search him in those cases. Isn't that correct? No. Well, respectfully, there is no evidence of what really happened at the buys. All that we have – Right, right, but he could have been carrying a gun. I mean, he had a gun, right? It would have been pure speculation, Your Honor. I know it would be speculation, but it's just as speculative to say there's no evidence he ever carried a gun. Respectfully, the proof is on the government to establish that. Well, it's not pure speculation because it's based on the fact that he had the gun and kept it near the drugs. You're just saying that that is not enough to show by preponderance of the evidence that he had the gun and kept it near the drugs because he could have just left it at home. Respectfully, a gun was found on the couch where this minuscule amount of drugs was found under the couch. It proves nothing. Did he have his own bedroom in this apartment? Yes, yes. And the gun and the drugs were found in the living room. Correct, correct. And there's nothing else here establishing a firearm was used in connection with a drug offense. All right. All right, thank you very much, Mr. Atherton. We'll hear from you again on rebuttal, but let's turn to the government. Ms. Koutsanis. Thank you, Your Honors. May it please the Court, my name is Jocelyn Courtney Koutsanis, and I represent the United States of America on this appeal. The district court did not err when it found probable cause in the affidavit supporting the state search warrant, which resulted in the search of Chaz Deer's apartment and the recovery of the gun and firearms. And I'd like to correct the record before I fully develop this argument on several points. The two controlled bys to Your Honors' question occurred after the visits. So the first visit, the first parole visit, is on September 23rd. Second parole visit is on October 15th. First controlled by is on or after November 29th. Second controlled by is on or about January 22nd. So they are significantly after those initial parole visits. As to what happened during those controlled bys, Your Honors can refer to pages 79 and 80 of Chaz Deer's appendix, in which the affidavit is, but during those controlled bys, for the first controlled by, Chaz Deer leaves from the cartilage of the apartment, and it states in the affidavit that he, the surveillance officers maintain constant surveillance of him until he goes to the meeting place. The second controlled by, he exits from the room. But they don't, they never see his face, right? They don't see his face. They identify the person who exits the apartment as consistent in appearance with him, and then after the by, the confidential informant says, I just bought the drugs from Chaz. And later, after the second controlled by, looks at a picture of Chaz Deer and says, that's the person I bought drugs from on both occasions. So under constant surveillance from the apartment. Second controlled by, he leaves from the rear door of his duplex, which is on the left side of the building, so specifically from his residence. Again, under constant surveillance. And again, conducts the marijuana sale. Again, it's turned over. And again, the confidential informant says he just got it from Chaz Deer. Or from Chaz, sorry. Just one other point of clarification, in terms of the layout of the apartment, Chaz Deer did not have his own bedroom. He shared a bedroom with his mother. But it is correct that the gun was found on the couch. So with regards to the probable cause that this warrant contained, it not only had these specific controlled bys, which tied Chaz Deer to leaving from the residence, going and conducting the controlled bys. But then it had this paragraph regarding the experience and training of the two Affians, one of whom had 22 years of experience, the other one seven years. And they said that in their experience, people who sell drugs keep drugs and drug proceeds in their house and other things like firearms and ammunition for firearms. This combined together was enough to establish probable cause. Under Illinois v. Gates, it's a common sense decision. And the decision should be paid great deference by reviewing courts. Additionally and alternatively, the district court found that the officers relied in good faith on the warrant that was signed by a state court judge. Which was another basis to uphold the search. As for the search of a firearm, the record reflects that Chaz Deer, so first of all, the warrant did contain information relating to the firearm and that it was in the experience of the Affians that firearms were found at the residences of drug dealers. But additionally, Chaz Deer is arrested outside the house. He tells the officers there's a firearm in his house. They then go back and the firearm is on the couch. So it's not quite the situation where the firearm is arguably in plain view on the couch and again, it's feet away from the drugs and other, in the cardboard box. As to the additional point on the omission of the two prior parole visits, those did not in any way undermine the probable cause determination. As I just stated to your honors, they occur, the first one is approximately four months before the second controlled by and over four months before the actual search of the apartment. The first visit, as your honor pointed out, was they went to charge the bracelet. It's just an open view visit. Second visit, they do do a compliance check. It is a search, but they do find drug packaging paraphernalia and a scale in the bedroom he shares. And additionally, they find the phone. And on that first phone, there is evidence of his drug trafficking. And that is combined with the drugs. I'll get to the phone. Is that in the affidavit? No, it's not in the affidavit, your honor. So the fact, whatever they found on the phone was irrelevant to whether they had the right to search. That's correct, your honor. But I'm- But your position is even if they had included information about that visit in the affidavit, it would have only increased the problem. Exactly. Exactly. As to the point regarding the allegation that the district court somehow demonstrated bias by commenting on the shooting death of a 14-year-old in Waterbury. I mean, this is, the district court was contextualizing the sentencing. It was, she was applying the real world common sense, exactly what I think we want district courts to do. Doesn't it suggest that the district court is worried a lot about gun violence and maybe is drawing inference that it didn't necessarily mean so? Why does the fact that the gun is just found in the house mean that he necessarily took it to the drug deal? So to get to that point, which is I guess more of a question on the enhancement. The enhancement. Yeah. So the fact that it's found in the house, it's found as your earlier question was pointing out, it's found feet away from drugs that are packaged for distribution. So I think as an initial matter under United States v. Luder and other similar cases, you can infer from that proximity that it was used to protect the stash. And additionally, you should look, the case law suggests that you have to look at the type of gun, the circumstances. Chazier is a convicted felon. He has a gun that's a semi-automatic firearm with an extended magazine, feet away from the drugs. He's not an addict. There's no evidence that he himself is using the drugs. And again, I go back to the phones. The first phone demonstrates that he's dealing drugs as of October 15th. The second phone, when he's arrested on January 30th, demonstrates that he's been dealing drugs up until the point of his arrest. And if you look back in the appendix, there's even messages that suggest that he was meeting drug customers at 286 House Street, which is the empty lot across from his apartment. So the fact that he has the guns with the drugs, he's meeting customers there, he's dealing drugs, there's no other evidence of any other reason why he would have a gun. I think that's more than enough for a preponderance standard. Well, somebody might have a gun in the home to protect the home, but not necessarily bring it to the… That's an argument that wasn't raised. Which is legal, you know, in New York State and the country. Legal to have a gun to protect the house. Not if you're a convicted felon. Not if you're a felon. And certainly not a semi-automatic firearm with an extended magazine. I mean, there's simply no purpose to have that to protect the house, that kind of a gun. So here, it's not just the proximity, it's also the nature of the weapon. It's the nature of the weapon, it's the proximity, it's the demonstrated evidence of his drug dealing. And again, it's under a guideline which says that it has to be in connection with a felony, have the potential to facilitate the felony under the application notes. And you only need the potential to facilitate it. So if he just carried it and never used it, it still would be using the gun. Correct. Under this court's precedent, under the United States, it's the Estevez and other such cases. And additionally, it's a preponderance of the evidence standard here that the district court found appropriately at sentencing. So you're totally unimpressed by the minuscule amounts of the drugs that he had, as told to us by opposing counsel? No, Your Honor, because I don't think you can look at those in a vacuum. I mean, with the demonstrated evidence of his drug dealing over those text messages and the fact that if there was some evidence that he was an addict, maybe it would be different. It's two different types of drugs. They're packaged for street-level distribution. I wouldn't necessarily describe them as minuscule. I mean, they're certainly not heavy distribution weight, but they're packaged for street-level distribution. And I think from the facts presented, the district court correctly inferred that by a preponderance of the evidence, there was sufficient evidence to support that enhancement. And if Your Honors have no further questions on any of these points, we would rest on our papers and ask that this court affirm the judgment of the district court and affirm the judgment of the district court. Thank you. Thank you very much. We'll turn back to Mr. Appleton on rebuttal. Thank you. Therese, two points, and I would like to rest on this court's precedent in prior cases. No court, this district, this circuit has never upheld a warrant based on training experience of an officer. Again, the warrant authorized the search of a person's home for a firearm where there was no information or evidence at all of a firearm prior and in this affidavit. This affidavit references two controlled buys with no firearms anywhere seen or observed or alleged to have been used or carried. But isn't that enough, the two controlled buys to do a search? Not of the home. If there's no evidence that a gun was in the home, it's not. Not for the gun. Isn't there enough evidence to do a search? No. No. I would respectfully submit no because there's no evidence that the officers saw the drugs in the home. In the home. They see him once traveling from the back curtilage of the house. There could be a million different ways. He could have had the drugs in the bush. He could have taken the drugs out of the glove compartment of the car. We don't know if he drove. We weren't allowed to probe. He could have taken it from the home, too, right? That's one of the places that's in the proximity of the back of the home. But the government has to establish probable cause that there is contraband or a firearm in the home. Could they have gotten a warrant to search the bush? You just mentioned he could have taken the gun from the bush. They could have gotten a warrant to search the bush. They could have gotten a warrant to search the outside of the house. They could have gotten a warrant to search any of those things in the proximity of the rear of the home. Yeah, sure. Isn't the home also in the proximity of the rear of the home? No. Respectfully, you're talking about going inside a person's home, inside a person's home to do a search. There's no evidence. There's no statement. There's no observation. There's no controlled, no CI information that he was in the home and saw a gun in possession of Mr. Deere. None of that's here. It's a training and experience warrant. That's it. And there's no training and experience. The real experience is omitted because they didn't include the information from very close in proximity. Now, respectfully submit whether the buys are a week or two after the visit. They're all close in time. And good faith exception under Riley, which we cited in our brief, does not apply when there's a reckless omission of material information. So good faith does not. What would you have them include in the warrant to make it no reckless omission? What would you have them included? They should have included that the parole officer who's referenced in paragraph 21 had been in the house twice before and not seen a firearm. That should have gone into the warrant. That was relevant information. They cite on paragraph 21 of the warrant, Affiant Edwards communicated with parole officer Wallace, who informed Affiant Edwards that he has been inside Chaz Deere's residence at 277 House Street. Full stop. Nothing more. It should have been said when Mr. Wallace was in the home, he did not see a firearm. And he did not see drug paraphernalia. If he saw it, we don't know. It's still controversial. But whatever he saw. But isn't the implication of saying he had been in the home and not saying that he had seen drugs or a gun, isn't the suggestion that he didn't see those things? Because otherwise they would have mentioned it. Correct. I mean, there's a suggestion he didn't see it. But it doesn't say it. It doesn't say it. And it's relevant information. Would a judge then authorize the search of a home if an officer on this task force had been in there twice and had not seen a gun? I don't think so. Well, I guess why wouldn't you? So let's say that there had been somebody in his home twice and had not seen the material. But then they witnessed him do two controlled buys. Why wouldn't the judge? At a location far from the home. Oh, I see. Now you're getting to the distinction about the home. I'm making a clear distinction here between inside the home, where the buys occurred, where the officer saw Mr. Deere. It all matters. It all matters because we're talking about a search of a person's residence. The Fourth Amendment protects homes as sacrosanct, as more secure than anything else. We're talking about going into somebody's home without probable cause. We have that argument. Thank you very much. The case is submitted. And because that is our last argued case this morning, we are adjourned. Court is adjourned.